UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No. 9:20-cv-81008 - Civ (Judge _____)

HARLEY-DAVIDSON CREDIT CORP.
*assignee of Eaglemark Savings Bank*,

        Plaintiff,

v.

FOUNTAINHEAD (BAH) LLC and
KENNETH V. FARINO,

        Defendants.

## COMPLAINT

Plaintiff Harley-Davidson Credit Corp., assignee of Eaglemark Savings Bank, for its Complaint against Fountainhead (Bah) LLC and Kenneth V. Farino (collectively "Defendants") alleges and states as follows:

## PARTIES

1.  Plaintiff Harley-Davidson Credit Corp. ("HDCC" or "Plaintiff") is a company organized and existing pursuant to the laws of the State of Nevada, having its principal place of business in Carson City, Nevada.

2.  Fountainhead (Bah) LLC ("FHB") is a limited liability company organized and existing pursuant to the laws of the State of Delaware, having its principal place of business located at 3511 Silverside Road, Suite 105 Wilmington, New Castle County, DE 19810.  All of the members of FHB are Kenneth V. Farino and his wife, Kim Farino, who are domiciled in and are citizens of the State of Florida, residing specifically at 8060 W. Lake Dr., West Palm Beach, Palm Beach County, FL, 33406-8631.

3. Kenneth V. Farino ("Farino"), as mentioned in paragraph 3 above, is an individual who is domiciled in and a citizen of the State of Florida, residing specifically at 8060 W. Lake Dr. West Palm Beach, Palm Beach County, FL, 33406-8631.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332, as there is diversity in citizenship and there is an amount in controversy that exceeds $75,000.

5. This judicial district is proper venue for this proceeding pursuant to 28 U.S.C. §1391(b)(2), as one of the Defendants resides, lives or does business in the Southern District of Florida.

## STATEMENT OF FACTS

### *Assignment of Loan Documents to HDCC*

6. Effective December 31, 2002, Eaglemark Savings Bank ("ESB") and HDCC entered into a Master Assignment Agreement ("Assignment") whereby ESB agreed to sell, and HDCC agreed to purchase, its right, title and interest in all "Loan Documents" relating to indebtedness of borrowers owed to ESB. A true and correct copy of the Assignment is attached hereto as **Exhibit A**, and is incorporated by reference herein.

7. Pursuant to the Assignment, the term "Loan Documents" includes all of ESB's Promissory Notes and Security Agreements, signed by borrowers and dated December 2002 and later. (*See* **Exhibit A**.)

### *FHB's Promissory Note and Security Agreement*

8. On or about April 29, 2008, Farino induced Eaglemark Savings Bank ("ESB") to advance credit to FHB by executing and delivering his Guaranty to ESB. A true and correct copy of the Unconditional and Continuing Guaranty ("Guaranty") is attached hereto as **Exhibit B**, and incorporated herein by reference.

9. Pursuant to the Guaranty, Farino "absolutely and unconditionally guarantee[d] the prompt and punctual payment, when due, of an Aircraft Secured Promissory Note and a[n] Aircraft Security Agreement] in the amount of $277,459.00, dated May 5, 2008" to be advanced by ESB to FHB. (*See* **Exhibit B**.)

10. In reliance on Farino's Guaranty, on May 5, 2020, ESB advanced credit in the sum of $277,459.00 ("Indebtedness") to FHB pursuant to the Aircraft Secured Promissory Note (hereinafter "Promissory Note") executed by FHB and delivered to HDCC. A true and correct copy of the Promissory Note is attached hereto and incorporated by reference as **Exhibit C**, and incorporated herein by reference.

11. To secure the repayment of the Indebtedness, on May 5, 2008, FHB and HDCC executed the Aircraft Security Agreement ("Security Agreement"), whereby FHB granted to HDCC a security interest in an aircraft more particularly described as follows: FAA Registration No.:N350MJ, Manufacturer: Piper, Model: PA-31-350, Serial Number: 31-7952228 ("Collateral"). A true and correct copy of the Security Agreement is attached hereto and incorporated by reference as **Exhibit D**.

12. HDCC perfected its security interest in the Collateral by filing the Security Agreement with the Federal Aviation Administration ("FAA"). True and correct copies of the search results pertaining to the Collateral from AREOTitle and the FAA Registry are attached hereto and incorporated by reference as **Exhibit E**.

13. Pursuant to the Promissory Note, FHB agreed to make equal monthly installment payments in the amount of $1,947.99 towards the repayment of the Indebtedness beginning on or about June 4, 2008 for a term of 240 months.

14. Pursuant to paragraph 4 of the Promissory Note, entitled "Events of Default," FHB would be in default under the Promissory Note if it failed to make payment of any

obligation due under the Promissory Note at the time and in the manner specific therein or in any other agreement between FHB and HDCC, or if FHB breached any of its agreements in the Promissory Note or the Security Agreement. (*See* **Exhibit C**)

15. Pursuant to paragraph 8 of the Security Agreement, entitled "Default," FHB will be in default if it breached any of the terms and conditions set for in either the Promissory Note or the Security Agreement. (*See* **Exhibit D**)

16. Pursuant to paragraph 5 of the Security Agreement, entitled "Maintenance and Repair," FHB agreed "to keep the Collateral in good condition and repair" and that for the term of the Agreement, FHB would, "at its expense, do or cause to be done" certain activities including, but not limited to, "(a) maintain and keep the Collateral in as good condition and repair as it is on the date of the Agreement, ordinary wear and tear excepted; (b) [m]aintain and keep the Collateral in good order and repair and airworthy condition in accordance with the requirements of each of the manufacturer's manuals and mandatory service bulletins and each of the manufacturer's non-mandatory service bulletins which relate to airworthiness" and "(c) [r]eplace in or on the Airframe, any and all Engines, parts, appliances, instruments or accessories which may be work out, lost, destroyed or otherwise rendered unfit for use, with unencumbered title to such replacement parts vesting in [FHB] upon installation." (*See* **Exhibit D**.)

17. Pursuant to paragraph 7 of the Security Agreement, entitled "Further Agreements," FHB agreed "[to] ensure [HDCC's] interest in the Collateral is shown on the title of all Collateral that has a certificate of title, or on the federal documentation of all goods that are documented under the laws of the United States" and "[n]ot to do anything to defeat [HDCC's] lien[.]" (*See* **Exhibit D**.)

18. Purusant to paragraph 5 of the Promissory Note entitled "Remedies Upon Default," upon default by FHB, HDCC "may, at its election, and without notice and without

4

demand, declare all of [FHB's] obligations immediately due and payable, together with all costs and expenses of the Lender's collection activity, and proceed with any and all remedies set forth in the [Security] Agreement or such other remedies as shall be provided by law." (*See* **Exhibit C**.)

19. Pursuant to paragraph 9 of the Security Agreement entitled "Remedies Upon Default," upon default by FHB, HDCC "may, at its election, and without notice and without demand" take one of several types of actions, all of which are authorized by FHB, including but not limited to, "(a) [declaring] all of [FHB's] obligations immediately due and payable, together will all costs and expenses of the Secured Party's collection activity including, without limitation, all reasonable attorney's fees[.]  (*See* **Exhibit D**.)

20. On April 15, 2020, Defendant Farino represented to HDCC that the aircraft that is part of the Collateral was parked outside of a hangar on tie-down in the Bahamas when it was destroyed during Hurricane Dorian.

21. On or about April 4, 2020, FHB defaulted under the terms of the Promissory Note and Security Agreement by failing to make the minimum monthly payment, and consequently accelerated the Indebtedness so that the entire amount was now due.

22. Despite demand, HDCC has not received payment on the Indebtedness from FHB or Farino.

23. Pursuant to the terms of the Promissory Note and Security Agreement, upon an Event of Default, and at the discretion of HDCC, all amounts outstanding became immediately due and owing, and payment in the entire outstanding principal amount, plus accrued interest, must be made by FHB, with time being of the essence.

24. Pursuant to the Guaranty, Farino is responsible for the Indebtedness of FHB upon an Event of Default on any debt or obligation due and owing to HDCC. (*See* **Exhibit B**.)

25. Due to the occurrence of at least one Event of Default by FHB, Farino became immediately responsible for the Indebtedness, plus accrued interest, attorneys' fees and costs due and owing form FHB to HDCC.

26. As of June 26, 2020 FHB and Farino owed HDCC the following amount:

   (a) Principal balance: $152,167.01

   (b) Accrued Interest: $2,732.75

   (c) Late Fees: $150.00

   (d) Interest Per Diem: $23.97

   **Outstanding Balance Due (As of June 26, 2020): $155,049.76, plus attorney's fees.**

## FIRST CAUSE OF ACTION
(Breach of Contract)
As Against Defendant Fountainhead (Bah) LLC

27. HDCC hereby incorporates each every allegation contained in Paragraphs 1 through 27 as if each was fully set forth at length herein.

28. FHB has breached the terms of Security Agreement and Promissory Note by failing to make payments when due thereunder, and is therefore in default for failure to pay.

29. HDCC has performed all obligations owed to FHB, except those obligations HDCC was prevented or excused from performing as a result of FHB's defaults and breaches.

30. As direct result of FHB's defaults and breaches, HDCC has been made to suffer pecuniary damages. As of June 26, 2020 HDCC has suffered damages in the amount of $155,049.76, plus accruing interest, attorneys' costs and fees.

## SECOND CAUSE OF ACTION
(Breach of Contract)
As Against Defendant Kenneth V. Farino

31. HDCC hereby incorporates each and every allegation contained in Paragraphs 1 through 30 as if each was fully set forth at length herein.

32. As a result of FHB's breach of its payment obligation pursuant to the Promissory Note and Security Agreement, HDCC has made demand upon Farino for payment of all amounts due and owing under his Guaranty, and Farino has refused to fulfill his obligations and responsibilities under the Guaranty.

33. Accordingly, Farino has breached his obligation under the Guaranty and in doing so, has caused HDCC to suffer pecuniary damages.

34. By executing the Guaranty, Farino expressly agreed to, and is so obligated, to pay HDCC's reasonable attorneys' fees and the costs of any action instituted to collect upon the default of FHB.

35. As a direct result of Farino's default on the Guaranty, and pursuant to the terms of the Promissory Note and Agreement, as of June 26, 2020 here is due and owing from Farino the amount of $155,049.76, plus accruing interest, attorneys' fees and costs.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, Harley-Davidson Credit Corporation, respectfully requests that this Court enter judgment against Defendants, jointly and severally, as follows:

1. For damages in the minimum amount of $155,049.76, plus accruing interest including post-judgment interest at the legal rate of interest;

2. For attorneys' fees and costs of suit according to proof as provided for by written agreement; and

3. For such other relief as this Court finds equitable and just.

Date:   June 26, 2020                **WONG FLEMING, P.C.**
*Attorneys for Plaintiff Harley-Davidson Credit Corporation*

By: */s/ Alexis Turner Garris*
    Alexis N. Turner Garris, Esq.
    FL Bar No.: 1011753
    821 Alexander Road, Suite 200
    Princeton, NJ 08543
    Tel:  (609) 951-9520
    Fax: (609) 951-0270
    Email: aturnergarris@wongfleming.com
    Secondary Email: dfleming@wongfleming.com